UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARMONDO SEPULVEDA,<br><br>        Petitioner,<br><br>    v.<br><br>RICHARD MORGAN,<br><br>        Respondent. | Case No.  C05-5548RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for **April 14, 2006** |

This matter has been referred to United States Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(A) and 636 (b)(1)(B), and Local Magistrates Rule MJR3 and MJR4.   Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following summary is taken from the Washington State Court of Appeals:

On September 27, 2001, Sepulveda fought others inside a Tacoma nightclub, Drake's, and a bouncer removed him. Once outside, Sepulveda screamed at someone inside the club that he was going to "f___ing kick [their] ass!" . . .

That night, Tacoma Police Officer David Yerbury worked at the club, off duty but in uniform. Yerbury told Sepulveda to go home, and Sepulveda replied, "F___ you; I don't give a f ___ about a cop." And "I'll cut your f___ing head off." . . .

Yerbury told Sepulveda that he risked arrest for threatening a police officer. Sepulveda backed away but continued to scream hostilities, challenging Yerbury to fight. Yerbury

> stayed on the sidewalk by Drake's front door.
>
> It was near closing time and a crowd of about 50 people stood on the sidewalk near Yerbury. Moments after Sepulveda left, Yerbury heard a racing engine sound and saw a vehicle driving on the sidewalk toward him at a high rate of speed. Pedestrians jumped from the car's path.
>
> When the vehicle abruptly stopped in front of Yerbury, he recognized the driver as Sepulveda. Sepulveda revved the engine and accelerated at Yerbury, who jumped out of the way. The vehicle stopped where Yerbury had been standing. Sepulveda rapidly backed his vehicle down the sidewalk. When he attempted to leave the sidewalk, other police officers blocked his path. Sepulveda left his vehicle when the officers drew their guns and ordered him out.
>
> Officer Robert Hannity handcuffed Sepulveda and advised him of his Miranda rights. When Yerbury approached, Sepulveda called him a "liar" and a "f____ing idiot" and spat in his face. . . . The assisting officers then re-advised Sepulveda of his Miranda rights, which Sepulveda acknowledged while continuing to curse the officers and calling them "wetbacks." . . . Witnesses later described Sepulveda as intoxicated.
>
> The State charged Sepulveda with three counts of second degree assault with a deadly weapon, listing victims Yerbury and club patrons Kuuipa Caccam and Carlton Olson. Sepulveda stipulated to his prior record and offender score, and the State served him with a persistent offender notice.
>
> A jury convicted Sepulveda as charged. The trial court sentenced him as a persistent offender to a mandatory life imprisonment without the possibility of parole. Sepulveda appeals his conviction and sentence.

State v. Sepulveda, Washington Court of Appeals Cause No. 28936-9-II, at 1-3 , included in Respondent's materials and documents filed along with his Answer to the Petition, Exhibit 3.

In his petition for writ of habeas corpus filed with this court on August 16, 2005, petitioner raises the following issues challenging his 2002 Pierce County convictions:

(1) The trial court denied him his Sixth Amendment rights when it excluded all evidence that he was being charged with his third strike and was therefore facing a sentence of life without the possibility of parole;

(2) Petitioner was denied effective assistance of counsel by not requesting the proper lesser included offense of reckless endangerment;

(3) Petitioner's sentence of life without the possibility of parole for the conviction of second degree assault is cruel and unusual punishment; and

(4) Washington States's Persistent Offender Accountability Act is unconstitutional, violates Ex Post Facto law and is in conflict with decisions made by the U.S. Supreme Court.

Respondent concedes that all the claims except for petitioner's claim of ineffective assistance of counsel claim has been properly exhausted. After carefully reviewing the petition for writ of habeas corpus, the answer to the petition, and the relevant state court record filed by respondent, this court

REPORT AND RECOMMENDATION
Page - 2

recommends denial of the petition for writ of habeas corpus. Each of the issues raised in the petition are discussed below.

### EVIDENTIARY HEARING NOT REQUIRED

In its Order Directing Service and Response, the court directed respondent to state whether or not an evidentiary hearing was necessary. The function of an evidentiary hearing is to try issues of fact; such a hearing is unnecessary when only issues of law are raised. See, e.g., Yeaman v. United States, 326 F.2d 293 (9th Cir. 1963). The undersigned judge concludes that there are no relevant factual disputes to resolve in order for the Court to render its decision in this case. Accordingly, an evidentiary hearing was not conducted.

### DISCUSSION

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

Before granting relief, the district court must first determine whether the state court decision was erroneous. Van Tran v. Lindsey, 212 F.3d 1143, 1155 (9th Cir. 2000), *cert. denied*, 121 5. Ct. 340 (2000). The district court must then determine whether the state court decision involved an unreasonable application of clearly established federal law. Id. The district court may grant habeas relief only if it finds

the state court decision was unreasonable. Van Tran, 212 F.3d at 1153; Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir. 2000).

*(i) SIXTH AMENDMENT RIGHTS (Claim One)*

Petitioner first argues the protection of his Sixth Amendment rights were violated. Specifically, Petitioner states, "The trial court erred in excluding all evidence that Mr. Sepulveda was charged with third strike offenses and faced a sentence of life without the possibility of parole, this exclusion of evidence denied him his State and Federal Constitutional Rights to defend at trial, to compulsory process, and to testify in his own behalf, 'he would not have committed because he knew he would be sent back to prison if he did!'"

The Sixth Amendment of the U.S. Constitution states. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." Here, petitioner's claims do not raise to the level of a violation of the Sixth Amendment of the U.S. Constitution.

"[A] federal habeas court may not prescribe evidentiary rules for the states." Swan v. Peterson, 6 F.3d 1373, 1382 (9th Cir. 1993). Consequently, alleged errors in the admission of the evidence are generally a matter of state law and are not cognizable in a federal habeas corpus proceeding. Estelle v. McGuire, 502 U.S. 62 (1991); Hendricks v. Vasquez, 974 F.2d 1099, 1105 (9th Cir. 1992); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986). "Claims of inadmissibility of evidence are cognizable in habeas corpus proceedings only when admission of the evidence violated the defendant's due process rights by rendering the proceedings fundamentally unfair." Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); Bueno v. Hallahan, 988 F.2d 86, 87 (9th Cir. 1993); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990). To obtain relief, the petitioner must show that, in light of the entire record, the alleged error rendered the entire trial so fundamentally unfair "that there is a reasonable probability that the error complained of affected the outcome of the trial . . . ." Carter v. Armontrout, 929 F.2d 1294 (8th Cir.

REPORT AND RECOMMENDATION
Page - 4

1991). If the alleged evidentiary error does not rise to this constitutional dimension, the federal court should dismiss the claim. Middleton, 768 F.2d at 1085.

The state court's decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990) (*citing* Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985), amended on other grounds, 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048 (1986)). Tinsley reiterated the court uses the following five factors to evaluate whether exclusion of evidence reaches constitutional proportions: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Tinsley, 895 F.2d at 530.

In this case, the prosecution made a pretrial motion to exclude certain evidence. The trial court, over defense's objection, ruled the evidence that the current offenses constituted Mr. Sepulveda's "third strike" was inadmissible. The court specifically stated, "I'm going to grant the State's motion [to suppress any evidence that the offenses were Sepulveda's third strike]. It should be no surprise to counsel. I don't follow dissenting opinions because my duty is to follow the case law decided by the majority of the Supreme Court [in State v. Wheeler, 145 Wash.2d 116, 2001], and that's what I intend to do. Certainly your viewpoint is preserved for the record. But counsel or the defendant – it applies to both of you – is not to mention that this is a persistent offender case, "three strikes" case, or make any direct comment that alludes to statements which could lead jurors to make that assumption." Exhibit 7, Verbatim Report of Proceedings, State v. Sepulveda, Pierce County Superior Court Cause No. 01-1-05003-8, Vol. I, April 17, 2002, at 59.

The case the trial court and defense counsel referred to, State v. Wheeler, 145 Wash.2d 116 (2001), *cert. denied*, 535 U.S. 996 (2002), holds that the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), requiring facts that increase a penalty beyond statutory maximum to be considered by the jury, did not apply to the facts of prior conviction. Wheeler, 145 Wash. at 122. Wheeler observed that there was no case law that extended Apprendi to sentence enhancements based on prior convictions. Id. at 123. Wheeler held the sentence enhancement resulting in life imprisonment for "third strikers" did not "pose a due process problem." Id. at 124.

In sum, the trial court, specifically relying on the majority opinion in <u>Wheeler</u>, properly excluded the evidence that Mr. Sepulveda's assaults constituted third strike for the POAA purposes. This Court should deny relief on this basis because Mr. Sepulveda's federal constitutional rights were not violated by the trial court's ruling.

This Court should also deny relief, because in the absence of the United States Supreme Court opinion on the issue in Mr. Sepulveda's case, the Washington Court of Appeals' adjudication of the claim on the merits cannot be contrary to, or an unreasonable application of clearly established federal law. The Court of Appeals adjudicated the issue as follows:

> Sepulveda first contends that the trial court erred in denying him the opportunity to tell the jury that he faced life imprisonment without the possibility of parole. He asserts that his "right to testify . . . clearly outweighed any interest in excluding the evidence." Appellant's Brief at 17. He argues that if the jury had been aware that he knew he would receive his third strike by assaulting a police officer, then it would have given greater weight to his theory of not intending to harm Yerbury.
>
> We accord the trial court great deference in making discretionary evidence rulings. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). A court abuses its discretion when it bases a decision on untenable grounds or gives unreasonable reasons. *Neal*, 144 Wn.2d at 609.
>
> The jury finds facts and it does not determine punishment. *State v. Townsend*, 142 Wn.2d 838, 846, 15 P.3d 145 (2001); *State v. Bunting*, 115 Wn. App. 135, 138-39, 61 P.3d 375 (2003). Only in capital cases does the jury learn about sentencing options and then, only after determining the defendant's guilt. *Townsend*, 142 Wn.2d at 846; *Bunting*, 115 Wn. App. at 138-39. The trial court did not abuse its discretion and Sepulveda's argument fails.

Exhibit 3, at 3.

The Washington Court of Appeals' adjudication of the claim on the merits is not contrary to, or an unreasonable application of, clearly established federal law. To this court's knowledge there is no United States Supreme Court's opinion that would hold that the exclusion of the sentence enhancement factor, based on the fact of prior convictions, violates inmates' constitutional rights in a non-capital context.

**(II)   PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM WAS NOT PROPERLY EXHAUSTED (Claim Two)**

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petition can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir.), *cert. denied*, 478 U.S. 1021 (1986). Full and fair presentation of claims to the state court requires

REPORT AND RECOMMENDATION
Page - 6

"full factual development" of the claims in that forum. Kenney v. Tamayo-Reyes, 504 U.S. 1, 8 (1992). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Duncan v. Henry, 513 U.S. 364, 365-66 (1995), *citing* Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982). Claims for relief that have not been exhausted in state court are not cognizable in a federal habeas corpus petition. James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994), *cert. denied*, 513 U.S. 935 (1994).

Petitioner included his claim of ineffective assistance of counsel when he appealed his case to the Washington State Court of Appeals, but he dropped that claim when he petitioned the Washington State Supreme Court for review. The claim of ineffective assistance of counsel has not been properly presented to the state's highest court.

*(iii)   EIGHTH AMENDMENT PROHIBITS CRUEL AND UNUSUAL PUNISHMENT (Claim Three ) And The CONSTITUTIONALITY OF WASHINGTON'S PERSISTENT OFFENDER ACCOUNTABILITY Act (Claim Four)*

Petitioner challenges the constitutionality of the imposition of a sentence of life without the possibility of parole pursuant to Washington State's Persistent Offender Accountability Act. He first argues that this sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment and second, that this sentence violates his rights protected by the ex post facto clause of the U.S. Constitution.

The Eighth Amendment bars, under certain circumstances, punishments that are grossly disproportionate to the crime being punished. Harris v. Wright, 93 F.3d 581, 583 (9th Cir. 1996) (*citing* Harmelin v. Michigan, 501 U.S. 957, 997-98 (1991) (Kennedy, J., concurring); United States v. Bland, 961 F.2d 123, 128-29 (9th Cir.), *cert. denied*, 506 U.S. 858 (1992) (Justice Kennedy's Harmelin concurrence was holding of the Court)). "An otherwise valid, if severe, punishment may nonetheless be unconstitutional when paired with a sufficiently minor crime." Harris, 93 F.3d at 584 (*citing* Harmelin, 501 U.S. at 996-98). "Disproportion analysis, however, is strictly circumscribed; we conduct a detailed analysis only in the 'rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" Harris, 93 F.3d at 584 (*quoting* Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring)). "The Supreme Court has declared that life imprisonment without possibility of parole for possession of 24 ounces of cocaine raises no inference of gross proportionality."

Harris, 93 F.3d at 584 (*citing* Harmelin, 501 U.S. at 1004-05 (Kennedy, J., concurring)). "A fortiori, it would raise none here." Harris, 93 F.3d at 584 (life imprisonment without parole for aggravated murder is not disproportionate). Additionally, the Ninth Circuit has upheld the federal three-strikes statute against a challenge that the statute violates the proportionality guarantee of the Eighth Amendment. United States v. Kaluna, 192 F.2d at 1199. As the Court held in Kaluna:

> Fourth, Kaluna argues that the three-strikes statute violates the proportionality guarantee of the Eighth Amendment. *See* U.S. Const. Amend. VIII ("cruel and unusual punishments [shall not be] inflicted"). Supreme Court precedent once again forecloses his claim. In its most recent pronouncement on the subject, the Court held that "the eighth amendment 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *United States v. Bland,* 961 F.2d 123, 129 (9th Cir. 1992) (*quoting Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991).

Kaluna, at 1199.

The ex post facto clauses of the United States Constitution, article 1, § 10 prohibits states from enacting any law that (1) punishes an act that was not punishable at the time the act was committed, (2) aggravates a crime or makes the crime greater than it was when committed, (3) increases the punishment for an act after the act was committed, and (4) changes the rules of evidence to receive less or different testimony than required at the time the act was committed in order to convict the offender. Collins v. Youngblood, 497 U.S. 37, 42 (1990); Weaver v. Graham, 450 U.S. 24, 30 (1981).

Mr. Sepulveda's criminal history states that on November 7, 1989, he was convicted of First Degree Rape and Second Degree Robbery (his first strike) and on July 17, 1996, he was convicted for First Degree Burglary (his second strike) and Third Degree Rape. He committed the crimes challenged in the instant petition in 2001 (his third strike).

The Persistent Offender Accountability Act was passed into law by 76% of Washington voters on November 3, 1993. Sepulveda's mandatory sentence of life without parole was triggered only upon his conviction of his third "most serious offense." See RCW 9.94A.030 (28) and RCW 9.94A.555, 9.94A.570. Mr. Sepulveda's claim that the Persistent Offender Accountability Act retroactively increases the punishment for his two previously committed strikes is without merit.

The Washington State Court of Appeals addressed Mr. Sepulveda's POAA constitutional challenges on the merits as follows:

POAA Challenges

Finally, Sepulveda asserts that his POAA status comprises an element of a crime not a sentence enhancement. Therefore, he contends because the jury did not determine his persistent offender status, *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), renders the POAA unconstitutional. Sepulveda misstates *Rings* holding.

*Ring* interpreted *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and held that if the legislature uses additional or aggravating factors to increase a maximum sentence, a jury must find these factors beyond reasonable doubt. *Ring*, 536 U.S. at 609; *State v. Smith*, 150 Wn.2d 135, 143, 75 P.3d 934, aff'd, 150 Wn.2d 135 (2003), *cert denied*, 124 S. Ct. 1616 (2004). Here, Sepulveda's argument fails because *Apprendi* clearly holds that a "prior conviction" is not one of these "aggravating or additional" factors that must go to a jury. 530 U.S. at 490; *State v. Thomas*, 150 Wn.2d 821, 847-48, 83 P.3d 970 (2004). And recently in *Smith*, 150 Wn.2d at 143, our Supreme Court reaffirmed its holding in *Wheeler* that

> Until the federal courts extend *Apprendi* to require [that prior convictions are used to prove a defendant is a persistent offender and thus the prior convictions must be charged in the information, submitted to a jury, and proved beyond reasonable doubt], we hold these additional protections are not required under the United States Constitution or by the [POAA].

*State v. Wheeler*, 145 Wn.2d 116, 117, 34 P.3d 799 (2001), *cert denied*, 535 U.S. 996 (2002).

Sepulveda also argues that the *Wheeler* opinion "invited a challenge to the POAA on state constitutional rounds [under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986)]." He asserts that our state constitution offers greater protection than the federal constitution and as such, the POAA is unconstitutional on due process and jury trial rights. Our Supreme Court recently addressed this argument and decided that under the *Gunwall* analysis, "there is no constitutional requirement that defendants be given a jury trial on the fact of their prior convictions." *Smith*, 150 Wn.2d at 156.

Other Constitutionality Arguments

Sepulveda further contends that life imprisonment without possibility of parole for a second degree assault conviction constitutes cruel and unusual punishment because the maximum sentence for second degree assault, a class B felony, is 120 months.

POAA punishes violent and most serious offenses. A defendant sentenced under the POAA must have committed two most serious or violent offenses before committing a third most serious offense, subjecting him to life imprisonment. *State v. Rivers*, 129 Wn.2d 697, 714, 921 P.2d 495 (1996). This sentence does not amount to cumulative punishment for prior crimes; it imposes a heavier penalty for repetitive criminal conduct. *Rivers*, 129 Wn.2d at 714-15.

The legislature defines second degree assault as a "most serious offense." RCW 9.94A.030(28)(b).k On charging, the State placed Sepulveda on notice that his prior convictions subjected him to the POAA. Our courts have addressed the essence of Sepulveda's argument and have repeatedly rejected his contention. *State v. Manussier*, 129 Wn.2d 652, 677, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997); *Rivers*, 129 Wn.2d at 714-15; *State v. Thorne*, 129 W n.2d 736, 775-76, 921 P.2d 514 (1996); *State v Ames*, 89 Wn. App. 702, 709-10, 950 P.2d 514, *review denied*, 136 Wn.2d 1009 (1998). Sepulveda's argument fails.

> Sepulveda also contends that the POAA violates our state constitution's prohibition of ex post facto laws. We previously addressed and rejected Sepulveda's argument in *State v. Nordlund*, 113 Wn. App. 171, 192-93, 53 P.3d 520 (2002), *review denied*, 149 Wn.2d 1005 (2003).

Exhibit 3, at 5-6.

Because the decision of the Washington Court of Appeals in adjudicating on the merits Mr. Sepulveda' ex post facto and cruel and unusual punishment claims based on his status as a persistent offender was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court, Mr. Sepulveda's claim must fail.

## **CONCLUSION**

Based on the foregoing discussion, the Court should deny the petition for writ of habeas corpus. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 14, 2006**, as noted in the caption.

DATED this 24th day of March, 2006.

                                           */s/ J. Kelley Arnold*
                                           J. Kelley Arnold
                                           United States Magistrate Judge